UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Sarah Black

        v.                              Civil No.  17-cv-350-JD
                                        Opinion No. 2018 DNH 087
Acting Commissioner,
Social Security Administration


                        O R D E R

        Sarah Black seeks judicial review, pursuant to 42 U.S.C. §
405(g), of the decision of the Acting Commissioner of Social
Security, denying her application for disability benefits under
Title II of the Social Security Act.  Black moves to reverse,
contending that the Administrative Law Judge ("ALJ") erred in
finding that she was not disabled.  The Acting Commissioner
moves to affirm.


                    Standard of Review

        In reviewing the final decision of the Acting Commissioner
in a social security case, the court "is limited to determining
whether the ALJ deployed the proper legal standards and found
facts upon the proper quantum of evidence."  Nguyen v. Chater,
172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276
F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's
factual findings as long as they are supported by substantial
evidence.  § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34

(1st Cir. 2016).  Substantial evidence is "more than a scintilla of evidence" but less than a preponderance of the evidence. Purdy v. Berryhill, --- F.3d ---, 2018 WL 1601791, at *3 (1st Cir. Apr. 3, 2018) (internal quotation marks omitted).  When the record could support differing conclusions, the court must uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); accord Purdy, 2018 WL 1601791, at *4.

## Background

Black seeks disability insurance benefits, alleging an onset of disability as of January 1, 2011, due to back pain. She was thirty-six years old at that time.  Her last insured date was December 31, 2011.

On January 3, 2011, Black saw Gayle Sutton, A.P.R.N., following an incident two days before when she bent over and because of back pain could not then straighten up.  She reported that she could only move slowly and that her back felt locked. Dr. Peter Dirksmeier performed a lumbar fusion surgery at the L4-5 and L5-S1 levels of Black's spine on November 9, 2011.

Black reported to Dr. Dirksmeier on February 3, 2012, that she was doing well, felt the best she had in a long time, and

had been doing physical therapy which was going well.  Dr. Dirksmeier's notes show that he advised Black to wean off of narcotic medications, that her fusion would be complete in the next three months, and that she should continue with physical therapy to be followed by an independent exercise program.

In April of 2012, Black saw Dr. James Hay and reported that her TENS unit was helping so that her pain was at zero out of ten.  Dr. Hay wrote that Black's back pain was entirely controlled by the TENS unit.  Black saw Dr. Dirksmeier in May and reported that she had no pain and was at a higher level of activity than even before her back incident.  Dr. Dirksmeier cleared Black for increased activities and told her that she would need exercise, weight loss, conditioning, and strengthening to prevent issues in the future.

Black saw Tara Fraser, P.A.C., in May of 2012, and reported that she was doing well on her antidepressant medication and that she had no pain.  On examination, Fraser found that Black had no acute distress, normal alignment and mobility, intact neurological responses, and a good affect and mood.

In November of 2012, Black saw Dr. Dirksmeier after a session with her chiropractor.  Black said that she had been doing well until the chiropractor performed an "adjustment" on her back that caused her to have sciatica down the right side. She said that her pain was seven out of ten.

On examination, Dr. Dirksmeier found that Black was not in acute distress and all tests and observations showed normal results. Dr. Dirksmeier discussed with Black the effects of her obesity and deconditioning on her mechanical low back pain. Dr. Dirksmeier noted that exercise was the key to improving Black's symptoms. Dr. Dirksmeier also ordered physical therapy.

State agency physician Dr. Natacha Sochat reviewed Black's record in June of 2014. Dr. Sochat found that Black had a primary severe impairment of degenerative disc disease and a secondary impairment of obesity. Dr. Sochat also found that Black could lift and carry ten pounds, stand and walk for a total of four hours, sit for six hours, and occasionally do postural activities. In addition, Dr. Sochat noted that Black had had increased functional limitations right after her back surgery.

In October of 2015, Loretta Shugre, M.S.W., LIC.S.W., wrote a letter stating that Black appeared to be capable of working. Shugre also wrote that Black was then working part time at a school doing recess duty and substitute teaching.

In March of 2016, Black had a consultative visit with Dr. Frank Graf to review her medical history and do an orthopedic examination. Dr. Graf found that Black had continuing functional restrictions because of back pain after her surgery in November of 2011, although she had had an initial improvement

in her symptoms.  Based on his review, Dr. Graf completed a "Physical Impairment Medical Source Statement" form in which he indicated that Black could walk for three city blocks without rest or pain, could sit for less than two hours in a work day, stand and walk for less than two hours in a work day, would need to be able to shift positions, would need unscheduled breaks every thirty minutes, could occasionally lift ten pounds, and was limited in postural activities.  Dr. Graf also indicated that Black did not use a cane but was restricted in the use of her hands so that she could do fine manipulations for 75% of a work day.

A hearing was held on Black's application.  Dr. Rita Clark testified as a psychiatric expert and stated that Black had no significant limitations due to psychiatric issues.  Black also testified.  A vocational expert testified about available jobs that Black could do despite her impairments.

In his decision, the ALJ found that Black had a severe impairment of degenerative disc disease of the lumbar spine status post lumbar fusion surgery.  In light of that impairment, the ALJ found that Black had a residual function capacity to do sedentary work, limited to lifting and carrying no more than ten pounds, sitting for up to six hours and standing and walking for up to four hours.  The ALJ also required that Black have the option to alternate positions during the workday, be limited to

no more than frequent fingering and handling, occasional postural activities, and simple and routine tasks. The ALJ found that Black could not return to her previous work but that there were other jobs she could do. As a result, the ALJ found that Black was not disabled for the requisite twelve-month period beginning before her last insured date. The Appeals Council denied review, making the ALJ's decision the final decision of the Acting Commissioner.

Discussion

Black moves to reverse the Acting Commissioner's decision on the grounds that the ALJ failed to consider the combined effects of her impairments, erred in weighing the medical opinion evidence, and erred assessing Black's testimony about her symptoms and limitations. The Acting Commissioner moves to affirm, arguing that the ALJ properly considered Black's impairments, the medical evidence, and Black's testimony.

Disability for purposes of disability insurance benefits means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has last or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(c)(1)(A). A claimant must also meet the insured status requirements to receive

benefits.  § 423(a)(1)(A).  In this case, the ALJ determined, and Black does not dispute, that she met the insured status requirements through December 31, 2011, which is her last insured date.  Therefore, Black must show that she was disabled before December 31, 2011. And that her disability continued for twelve months. Fisher v. Colvin, 831 F.3d 31, 32-33 (1st Cir. 2016); Drew v. Colvin, --- F. Supp. 3d ---, 2018 WL 889226, at *2 (D. Mass. Feb. 14, 2018); Squeglia v. Berryhill, 2017 WL 773528, at *3 (D.N.H. Feb. 28, 2017).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis.  20 C.F.R. § 404.1520; Purdy, 2018 WL 1601791, at *1-*2.  The claimant bears the burden through the first four steps of proving that her impairments preclude her from working.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Acting Commissioner has the burden of showing "evidence of specific jobs in the national economy that the applicant can still perform." Purdy, 2018 WL 1601791, at *2.

A.  Medical Opinion Evidence

Black argues that the ALJ erred in giving more weight to Dr. Sochat's opinion than to Dr. Graf's opinion.  In support, Black argues that because Dr. Graf examined her, in addition to reviewing her records, the ALJ was required to give his opinion

more weight.  Black also argues that Dr. Sochat's opinion is unsupported because she did not review Black's most recent medical records and did not discuss some of the records that were available to her.

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record.  20 C.F.R. § 404.1527(b).[1]  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  § 404.1527(a)(1). Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that support or detract from the opinion.  § 404.1527(c).  One factor to be considered is the medical source's "understanding of [social security] disability programs and their evidentiary requirements." § 404.1527(c)(6).

_____

[1] Because Black's claim was filed before March 27, 2017, the new rule for considering medical opinions does not apply.  See 20 C.F.R. § 404.1520c; Purdy, 2018 WL 1601791, at *4, n.8 (discussing § 416.920c under Title XVI).

A "treating source" is a physician or other acceptable medical source who has provided "medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." § 404.1527(a)(2). An "ongoing treatment relationship" exists "when the medical evidence establishes that [the claimant] see[s], or ha[s] seen the [physician] with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." Id. If a treating physician's opinion is well-supported by objective medical evidence and not inconsistent with other medical evidence in the record, the ALJ will give the opinion controlling weight. Id.

Neither Dr. Sochat nor Dr. Graf are Black's treating physician. Dr. Sochat is a state agency physician, whose understanding of the disability program and the evidentiary requirements of the program entitles her opinion to more weight. Dr. Graf is an orthopedic specialist who was hired by Black's attorney to provide an opinion in support of her application for benefits. As such, both doctors have credentials to support their opinions.

1. Dr. Sochat

The ALJ gave great weight to Dr. Sochat's opinion that Black was limited to sedentary level work with an additional

limitation to only occasional postural movements. The ALJ credited Dr. Sochat's knowledge of the disability program and noted that she had reviewed relevant medical evidence, including medical evidence for six months after Black's date last insured. The ALJ did add a limitation to his residual functional capacity to allow positional change, which Dr. Sochat did not include, to address Black's testimony.

Black argues that the ALJ erred in giving Dr. Sochat's opinion great weight because she was a non-treating source and because she did not review or discuss all of Black's records.[2] As noted above, opinions provided by state agency physicians are entitled to weight based on their understanding of the disability program. Black cites no requirement that a medical source discuss every medical record that she reviewed, nor does she explain why medical records for treatment long after her date last insured are relevant to the disability determination. Therefore, Black has not shown that the ALJ erred in giving Dr. Sochat's opinion great weight.

---

[2] To the extent Black argues that Dr. Sochat found she was disabled post surgery and before her date last insured, Dr. Sochat's opinion does not support that conclusion. Further, even if that were the case, the medical evidence after the date last insured shows that Black recovered quickly so that any disability caused by the surgery was of short duration and did not extend for the required twelve-month period.

## 2. Dr. Graf

The ALJ gave less weight to Dr. Graf's opinion because his examination and review were done more than four years after Black's last insured date and his opinion was not consistent with Black's record during the relevant period. Specifically, the ALJ noted that while Dr. Graf found that Black's surgery provided only partial relief, the record shows that the surgery did relieve her pain and that the pain did not return until November of 2012, eleven months after her last insured date, as the result of a chiropractic adjustment. To the extent Black experienced pain that began after her last insured date, any disability related to that pain did not occur during the relevant period and cannot be considered to support her claim. Therefore, Black has not shown that the ALJ improperly discounted Dr. Graf's opinion.

## B. Combined Effects of Impairments

Black faults the ALJ for failing to find additional limitations based on impairments that the ALJ found were not severe. In support, she again contends that the ALJ should have adopted Dr. Graf's opinions and rejected Dr. Sochat's opinions. As is discussed above, the ALJ properly weighed the medical opinion evidence.

To the extent Black intended to challenge the ALJ's finding at Step Two, that theory lacks merit. The ALJ continued on through the five steps of the sequential analysis and did consider Black's other impairments. Therefore, any error at Step Two was harmless. Garneau v. Berryhill, 2017 WL 4512160, at *7 (D.N.H. Oct. 10, 2017).

C. Black's Testimony

Black contends that the ALJ improperly evaluated her testimony in a manner that was not consistent with Social Security Ruling ("SSR") 16-3p. Specifically, Black points to the ALJ's finding that "'intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Doc. 9-1, at 11 (quoting ALJ's decision at 17). She contends that the ALJ's statement violates the requirement in SSR 16-3p that the Acting Commissioner "'will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.'" Doc. 9-1, at 11 (quoting SSR 16-3p).

Taking the ALJ's statement in context, he explains that Black's testimony about her current condition is inconsistent

with the medical evidence and her own testimony about her condition during the relevant period before December 31, 2011. The ALJ did not disregard Black's statements but instead explained why the evidence showed she was not as limited during the relevant period. The ALJ cites both the objective medical evidence and Black's statements to Dr. Dirksmeier and Dr. Hay. As such, Black has not shown that the ALJ failed to comply with the requirements of SSR 16-3p.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 9) is denied. The Acting Commissioner's motion to affirm (document no. 12) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge


April 30, 2018

cc:  D. Lance Tillinghast, Esq.
     Terry L. Ollila, Esq.